**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHEMIKA N. SKILLINGS,<br><br>Plaintiff, | ) | |
| v. | ) | Case No. 17-CV-572-JED-JFJ |
| FLOYD CROWDER, et al.,<br><br>Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is Defendants Floyd Crowder and D.T. "Duck" Adams' Motion to Dismiss the Amended Complaint (Doc. 50). In their Motion, Defendants Crowder and Adams argue that Plaintiff's Amended Complaint should be dismissed as to them pursuant to Fed. R. Civ. P. 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim, respectively. Plaintiff Shemika N. Skillings submitted a Response in Opposition, which included a Motion to Strike Defendants' Motion to Dismiss under Rule 12(f) and to Admonish Defendants' Counsel to Comply with the Oklahoma Bar's Standard of Professional Conduct and a Motion to Grant Leave to Amend in Lieu of Dismissal (Doc. 72, 73). Defendants Crowder and Adams subsequently filed a Reply (Doc. 89).

**I. Plaintiff's Allegations**

The following is a summary of Plaintiff's factual allegations, with an emphasis on her allegations against the movants, Defendants Crowder and Adams. These allegations are contained in her Amended Complaint (Doc. 22) and must be taken as true at the dismissal stage.

On or about March 6, 2016, Plaintiff brought her four-year-old daughter from Virginia to Oklahoma. According to Plaintiff, she had an agreement with her ex-husband that allowed for this trip. On March 7, Defendant Floyd Crowder, an investigator and Sheriff's Deputy for Dinwiddie

County, Virginia, called Plaintiff several times demanding that she bring the child back to Virginia. Plaintiff told Crowder of her agreement with her ex-husband and also informed him "that all matters pertaining to the custody of [the] child would be discussed amongst their civil attorney[s]." (Doc. 22 at ¶ 18). Plaintiff also sent an email to Defendant Linda Johnson, a lawyer representing Plaintiff's ex-husband, telling her that she would bring the child back to Virginia on March 11, 2016.

According to Plaintiff, Defendant Crowder and Defendant D.T. "Duck" Adams, the Sheriff of Dinwiddie County, "fraudulently investigated and maliciously issued a warrant for kidnapping against the plaintiff." (*Id*. at ¶ 42). Subsequently, Broken Arrow police officers arrived at Plaintiff's home on March 11, 2016, and arrested her. She spent approximately 36 hours detained in the Broken Arrow municipal jail. She was then transferred to Wagoner County jail and was booked on a "Fugitive from Justice" charge. Soon thereafter, a copy of the Virginia felony warrant for kidnapping was faxed to the Wagoner facility. Ultimately, four days after her arrest in Broken Arrow, Plaintiff was released on a $20,000 bond. Plaintiff then appeared before a magistrate judge in Dinwiddie County, and the kidnapping charges were dismissed.

Plaintiff brings several claims against Defendants Crowder and Adams: claims of "fraudulent investigation, malicious prosecution, abuse of process, and unlawful seizure and by Defendants in violation of procedural and substantitive [*sic*] due process rights guaranteed to Plaintiff by the Fourth and Fourteenth Amendments to the U.S. Constitution," brought under 42 U.S.C. § 1983 (Count II); claims of "unlawful seizure by arrest, detention and incarceration under void process by Defendants in violation of the procedural and substantitive [*sic*] rights guaranteed to Plaintiff by the Fourth and Fourteenth Amendments to the United Constitutions," also brought under 42 U.S.C. § 1983 (Count III); and a claim of conspiracy to violate Plaintiff's civil rights,

brought under 42 U.S.C. § 1985 (Count IV). (Doc. 22 at 7-10). Count I of the Amended Complaint, "deprivation of rights under the United States Constitution," is also brought against Defendant Adams. (*Id*. at 6-7).

## II. Legal Standards

It is undisputed that both Defendant Crowder and Defendant Adams are residents of the State of Virginia. (*See* Doc. 50-12 at ¶ 2; Doc. 50-13 at ¶ 2). For a court to exercise personal jurisdiction over a defendant, the plaintiff must demonstrate the existence of facts satisfying both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Okla. Stat.* tit. 12, § 2004(F).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process," the court "must first assess whether 'the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1159-60 (10th Cir. 2010)). The minimum-contacts standard is satisfied by either general or specific jurisdiction. *Niemi*, 770 F.3d at 1348. "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state . . . ." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006)). The Court finds no evidence that Defendant Crowder or Defendant Adams has

sufficient affiliations with Oklahoma to support general jurisdiction, (*see* Doc. 50-12 at ¶ 4; Doc. 50-13 at ¶ 4), and Plaintiff does not appear to argue that such jurisdiction exists here.

Specific jurisdiction, on the other hand, exists "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Under what is known as the *Calder* "effects test," purposeful direction may be established by showing that an out-of-state defendant committed "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The Tenth Circuit, in interpreting *Calder*, has emphasized that the forum state must be the "focal point" of the alleged tortious conduct. *Id.* at 1074-75.

In addition to determining the existence of minimum contacts with the forum state, the district court must also analyze whether the assertion of personal jurisdiction over non-resident defendants would "comport with 'fair play and substantial justice.'" *Equifax Servs. Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990) (quoting *Burger King*, 417 U.S. at 476). The following factors guide this analysis:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo*, 465 F.3d at 1221 (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Pro Axess, Inc.*, 428 F.3d at 1280

(quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998)) (alteration omitted).

Lastly, because this Court is ruling on a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, Plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc.*, 149 F.3d at 1091.

**III. Analysis**

Plaintiff first argues that personal jurisdiction may be exercised over Defendants Crowder and Adams based on an agency theory. (Doc. 72 at 14-15).[1] It is well established in our Circuit "that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990). The essence of an agency relationship, in turn, "is the principal's right to, as well as its exercise of, control over the agent." *Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 566 (Okla. 2004); *see also* Restatement (Second) of Agency § 1 (Am. Law. Inst. Oct. 2018) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

In this case, the Court finds finding nothing in the Amended Complaint to suggest that any of the Oklahoma-based defendants were acting as agents of the Sheriff and Sheriff's Deputy of Dinwiddie County, Virginia. Instead, Defendants Chisum, Lauderdale, Chambers, Elliott, Boggs, Adams, and Crowder were all agents for the law enforcement administrations of their respective jurisdictions. *Compare Marsh v. Kitchen,* 480 F.2d 1270 (2d Cir. 1973) (holding that Secret Service agents in New York who arrested plaintiff were not acting as agents of the Missouri-based Secret Service agent that procured the arrest warrant) *with Taylor*, 912 F.2d at 433 (holding that

[1] The page numbers referenced in this Opinion are those found in the header of each document.

the district court could exercise jurisdiction over the Kansas City, Missouri Board of Police Commissioners based on the forum-related conduct of the Board's employees). The Court, therefore, rejects Plaintiff's argument that it can exercise personal jurisdiction over Adams and Crowder based on an agency theory.

Plaintiff also asserts that this Court can exercise personal jurisdiction over Defendants Crowder and Adams based on a conspiracy theory. (Doc. 72 at 17). "The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007). However, "the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id*.

In this case, Plaintiff makes vague, conclusory, and often confusing allegations of concerted action that fail to support an exercise of personal jurisdiction over Defendants Crowder and Adams. The following excerpts are a sampling of these allegations:

> 33. The misleading, incomplete and fraudulent information provided to defendants Crowder and Duck [Adams] by Linda Johnson and because of the fraudulent and incomplete investigation and malicious charge by Defendants, Crowder and Duck [Adams] in a concerted action with each other and others, was the proximate cause of plaintiff['s] unlawful arrest and false imprisonment, intentionally causing a violation of her guaranteed rights under the Fourth[,] Sixth and Fourteenth Amendments to the United States Constitution.
>
> . . .
>
> 63. Defendants Linda [Johnson], Crowder and Duck [Adams], acting alone and together and in concert with one another and with others, maliciously and without reasonable grounds therefor initiated legal proceedings in the Juvenile Domestic Relations Court in the County of Dinwiddie, Virginia, which resulted in the unlawful arrest and detention of the Plaintiff in the State of Oklahoma by the Broken Arrow Police Department.
>
> . . .
>
> 81. All Defendants acting in their individual capacities and under color of law, having conspired together and with others, reached a mutual understanding to

engage in a course of conduct, and otherwise conspired among and between themselves, to deprive Plaintiff of her constitutional rights . . .

82. . . .

(b) All Defendants agreed and acted intentionally to falsely arrest and imprison plaintiff as aforementioned.

(c) The Defendants agreed and acted to intentionally submit false warrants, and false charges to support and corroborate the fabricated charges lodged against plaintiff.

(Doc. 22 at ¶¶ 33, 63, 81, 82(b) and (c)). Notably, many of Plaintiff's allegations emphasize the relationship between Defendants Crowder and Adams with Defendant Linda Johnson, who is also a Virginia resident. Even construing her allegations liberally, the Court finds that Plaintiff has failed to make a plausible showing that either Crowder or Adams conspired with any of the Oklahoma-based defendants such that the exercise of personal jurisdiction over Crowder and Adams would be proper.

Lastly, Plaintiff argues that Defendants Crowder and Adams purposefully directed their activities toward Oklahoma because they "knew or should have known that their acts in Virginia would result in the unlawful arrest of the Plaintiff [in Oklahoma]." (Doc. 72 at 18). In *Rodgers v. Fallin*, the Western District of Oklahoma analyzed a remarkably similar fact pattern and concluded that it could not exercise personal jurisdiction over Missouri officials alleged to have played a role in the plaintiff's arrest in Oklahoma. No. CIV-12-171-D, 2013 WL 149723 (W.D. Okla. Jan. 14, 2013) (unpublished). In that case, the plaintiff alleged in her complaint that she failed to comply with a Missouri court's order granting custody of her triplets to her ex-husband. *Id*. at *2. Instead of bringing the children back to Missouri, where her ex-husband lived, she remained in Oklahoma with the triplets. She was ultimately charged in Pulaski County, Missouri, with the felony crime of Interference with Custody. She was then arrested in Oklahoma and extradited to Missouri.

Among the defendants in the *Rodgers* suit were several Missouri officials: the governor, the assistant prosecuting attorney and county prosecuting attorney for Pulaski County, as well as two judges of the Pulaski County Circuit Court. *Id*. at *1. Although these non-resident defendants "may have known [plaintiff] was residing in Oklahoma at the time the initial custody order was modified and, later, when the criminal charge was filed and her extradition was requested," the district court held that "such knowledge [was] not enough to establish personal jurisdiction over them." *Id*. at *5. The district court declined to apply *Calder*, finding that Oklahoma was not the "focal point" of the alleged tortious conduct of the Missouri defendants. *Id*. Instead, the court held that the plaintiff had "failed to show that any of [the Missouri defendants'] actions could constitute purposeful availment of the benefits of conducting activities in Oklahoma." *Id*. at *6.

In contrast, the Tenth Circuit held in *Taylor v. Phelan* that the exercise of personal jurisdiction over an out-of-state police detective satisfied the requirements of due process when the detective had engaged in allegedly negligent conduct in the forum state itself. 918 F.2d at 432-33. In *Taylor*, the detective-defendant journeyed to the forum state, visited the plaintiffs' home, and assured the plaintiffs they would be safe from harm. The plaintiffs alleged that this assurance resulted in their failure to take precautions to protect themselves from a man against whom they had filed a criminal complaint. As stated by the Circuit Court, "[t]he forum-related contact was the assurance," and the negligence claim clearly arose out of this contact. *Id*. at 433.

In the present case, the Court finds that the alleged actions by Defendants Crowder and Adams all took place in Virginia in connection to child custody and criminal proceedings in that state. Plaintiff has alleged no facts that support a conclusion that these defendants purposefully directed their activities toward Oklahoma and would reasonably anticipate being haled into court

here, even if they understood that Plaintiff was located in Oklahoma when her arrest warrant was issued.

The Court also considers the undisputed affidavits submitted by Adams and Crowder which assert that they have never been to Oklahoma, done business in Oklahoma, or consented to jurisdiction in Oklahoma. (Doc. 50-12 at ¶ 4; Doc. 50-13 at ¶ 4). As stated in *Walden v. Fiore*, "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. 277, 285 (2014). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. Here, Plaintiff's decision to be in Oklahoma with her child is the only connection between these defendants and the forum. As such, the Court finds that Plaintiff has failed to make a prima facie showing to support personal jurisdiction.

Not only does the Court find a lack of minimum contacts, the Court also concludes that exercising personal jurisdiction over these defendants would offend traditional notions of fair play and substantial justice. *See Equifax Servs. Inc.*, 905 F.2d at 1359. Specifically, the Court finds that it would be a significant burden on these defendants to defend this case in Oklahoma, given their residence in Virginia. The Court also finds that Virginia has a far greater interest in resolving this dispute, since the actions alleged to have been taken by Defendants Crowder and Adams were related to child custody and criminal proceedings in that state. For the same reason, the Court finds that the shared interest of Oklahoma and Virginia in furthering fundamental social policies weighs against this Court exercising jurisdiction over Crowder and Adams. Overall, these considerations outweigh any added convenience or efficiency for the Plaintiff in having her claims against these defendants heard in Oklahoma.

Where a court determines that it lacks personal jurisdiction, it must either dismiss the claims against the movants without prejudice or, in the interest of justice, transfer the action to another forum pursuant to 28 U.S.C. § 1631. *Trujillo*, 465 F.3d at 1223. The Tenth Circuit has identified three factors warranting transfer rather than dismissal: (1) a new action would be time barred; (2) the claims asserted are likely to have merit; and (3) the original action was filed in good faith rather than after "plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Id.* at 1223 n.16 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996)).

The Tenth Circuit has also recognized that multiple defendants residing in multiple states such that "there [is] no single court to which the action could be transferred with any assurance that jurisdiction would [be] proper" poses a "patent impediment" to transfer. *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011); *see also Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801, at *11 (D. Kan. Apr. 29, 2015), *aff'd*, 657 F. App'x 793 (10th Cir. 2016); *Smalls v. Stermer*, No. 10-3025-JTM, 2011 WL 1234781, at *6 (D. Kan. Mar. 31, 2011), *aff'd* 457 F. App'x 715 (10th Cir. 2012). The circuit stated that it was unaware of any authority "permitting, much less requiring a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631." *Id.* at 1249-50.

The remaining defendants, apart from Crowder and Adams, are residents of Oklahoma; thus, the Court is far from assured that any single court would have jurisdiction over all of the defendants. The undersigned interprets *Shrader* as instructing against unilaterally splitting up the present action to transfer one part to Virginia in an attempt to cure a want of jurisdiction. The Court also considers that Virginia's relevant tolling provision, Va. Code § 8.01-229(E)(1), would

likely allow Plaintiff to refile this action in the proper forum. The Court, therefore, finds that Plaintiff's action against Defendants Crowder and Adams should be **dismissed without prejudice** rather than transferred.

## IV. Motion to Amend

Because the Court finds a lack of personal jurisdiction here, it need not consider the movants' Rule 12(b)(6) arguments. Subsequently, Plaintiff's motion for leave to amend the Amended Complaint in lieu of a dismissal pursuant to Rule 12(b)(6) (Doc. 73) is **denied**.

## V. Motions to Strike and Admonish

As part of her Response, Plaintiff moves the Court to strike certain portions of the Defendants' Motion that she argues are "scandalous, impertinent and immaterial." (*See* Doc. 72 at 6-8). She further requests that the Court admonish Defendants' counsel to comply with the Oklahoma Bar Association's Standards of Professionalism and Rule 11. (*Id*. at 7).

Pursuant to Fed. R. Civ. P. 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored, and "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." 5A Wright & Miller, Fed. Prac. & Proc. § 1382 (3d. ed. 2018); *see also E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 2211011, at *1 (N.D. Okla. May 28, 2014); *U.S. v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. June 8, 1993). While some of the challenged content seems more appropriate for a motion for summary judgment than a dismissal motion, the Court finds nothing "redundant, immaterial, impertinent, or scandalous" that would justify granting Plaintiff's motion to strike or her request to admonish Defendants' counsel.

Moreover, given that this Opinion and Order dismisses Plaintiff's claims against these defendants, there is no risk of prejudice. Therefore, these requests are **denied**.

## VI. Conclusion

Because the Court finds that it cannot exercise personal jurisdiction over Defendants Crowder and Adams, their Motion to Dismiss (Doc. 50) is **granted**, and Plaintiff's claims against Defendants Crowder and Adams are hereby **dismissed without prejudice**. Plaintiff's Motion to Strike, Motion to Admonish, and Motion to Amend (Doc. 73) are **denied**.

**SO ORDERED** this 26th day of March, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT