# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHEMIKA N. SKILLINGS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 17-CV-572-JED-JFJ |
| ) | |
| FLOYD CROWDER, et al. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court is Defendant David Boggs' Motion to Dismiss Amended Complaint (Doc. 51). Defendant Boggs argues that Plaintiff's claims against him should be dismissed for failure to state a claim against him in his individual and official capacities, for failure to provide proper service of process, and on the basis of qualified immunity. Plaintiff Shemika N. Skillings has submitted a Response in Opposition (Doc. 92), which included a Motion for Leave to Amend in Lieu of Dismissal (Doc. 93). Defendant Boggs has submitted a Reply (Doc. 99).

## I.   Plaintiff's Allegations

The following is a summary of Plaintiff's factual allegations, with an emphasis on her allegations against the movant, Defendant Boggs. These allegations are contained in her Amended Complaint (Doc. 22) and must be taken as true at the dismissal stage. *See Broker's Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

On or about March 6, 2016, Plaintiff brought her four-year-old daughter from Virginia to Oklahoma. According to Plaintiff, she had an agreement with her ex-husband that allowed for this trip. Nevertheless, an arrest warrant was issued against her in Virginia for kidnapping. On March 11, 2016, Broken Arrow police officers arrived at Plaintiff's home and arrested her. She spent approximately 36 hours detained in the Broken Arrow Municipal Jail before being transferred to

1

the Wagoner County Jail. Ultimately, four days after her arrest in Broken Arrow, she was released on a $20,000 bond. Plaintiff then appeared before a magistrate judge in Dinwiddie County, Virginia, and the kidnapping charges were dismissed.

Defendant Boggs served as the Police Chief of the Broken Arrow Police Department at the time of Plaintiff's arrest. Plaintiff includes Boggs in three separate counts in her Amended Complaint, all brought under 42 U.S.C. § 1983 and/or § 1985. The first, Count III, centers around her arrest and detention, which she claims were unlawful. She alleges that "[a]t no time throughout her detention or seizure was [she] presented a warrant or told of the charges against her." (Doc. 22 at ¶ 72). She also alleges that the warrant for her arrest was invalid on its face. (*Id*. at ¶ 73). In Count IV, she alleges that all of the defendants, including Boggs, conspired together to violate her civil rights. (*See id*. at ¶¶ 79-83). Lastly, in Count V, Plaintiff claims that certain defendants, including Boggs, failed to provide her with a probable cause determination within 48 hours of her arrest. She alleges that Boggs "knew, should have known or had the opportunity to know that [she] was not taken before a magistrate as required by law to determine probable cause." (*Id*. at ¶ 85).

## II. Dismissal Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Broker's Choice of Am., Inc.*, 861 F.3d at 1103 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint that merely "tenders naked assertion[s]' devoid of 'further factual enhancement'" does not satisfy the pleading standard. *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion made against a pro se plaintiff, the court must liberally construe the pleadings, take all well-pleaded facts as true, and make all reasonable inferences in

2

factor of the non-moving party. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Broker's Choice of Am., Inc.*, 861 F.3d at 1105. The district court should hold a pro se litigant's pleadings to a "less stringent standard than formal pleadings drafted by lawyers," but a court must not serve as the litigant's advocate. *Hall v. Bellmon,* 935 F.2d at 1110.

**III. Analysis**

As stated above, Plaintiff brings her claims under 42 U.S.C. § 1983 and § 1985. Pursuant to U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Section 1985, in turn, pertains to conspiracies that interfere with civil rights.

The Court will first analyze Plaintiff's § 1983 and § 1985 claims against Defendant Boggs in his individual capacity before discussing her claims against him in his official capacity. The Court will then address the issue of proper service of process.

**1. Individual Capacity Claims**

**a. Count III**

The first step the undersigned must take "is to identify the specific constitutional right allegedly infringed." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (quoting *Albright v. Oliver*, 510 U.S. 266 (1994)). "Courts then look to common-law torts as analogies to determine the contours . . . of § 1983 claims." *Id.*

In the present case, it is not particularly easy to determine the proper analogy for Plaintiff's claim in Count III of her Amended Complaint. Plaintiff titled Count III as "Unlawful seizure by arrest, detention and incarceration under void process by Defendants in violation of the procedural

and substantitive [*sic*] rights guaranteed to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution." (Doc. 22 at 9). She alleges, *inter alia*, that "Defendants deliberately caus[ed] the false arrest and false imprisonment of the plaintiff," (Doc. 22 at ¶ 76), and that "Defendants intentionally restrained and instigated the restraint of plaintiff against her will for thirty-six hours in the Broken Arrow City jail, and three days in the Wagoner County jail without lawful authority." (*Id*. at ¶ 74).

The Tenth Circuit has described two types of claims based on the Fourth Amendment, one or the other of which may serve as an appropriate analogy in this case. First, a false arrest or false imprisonment claim is the closest analogy when a person alleges an unreasonable seizure imposed *without* legal process. *Myers*, 738 F.3d at 1194. In contrast, "[u]nreasonable seizures imposed *with* legal process precipitate Fourth Amendment malicious-prosecution claims." *Id*. (emphasis added). In the latter scenario, a plaintiff claims that "the legal process itself was wrongful." *Id*. at 1195 (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

In the present case, Plaintiff alleges that she was arrested "without process," (Doc. 22 at ¶ 71), but she also discusses "[t]he purported warrant" for her arrest and describes the warrant as "void" and "invalid on its face." (*Id*. at ¶ 73). An arrest pursuant to a warrant would be considered a seizure imposed *with* legal process; thus, it is unclear whether Count III should be treated as a false arrest/imprisonment claim or a malicious prosecution claim. Nonetheless, the Court finds that Plaintiff has failed to sufficiently plead either type of claim against Boggs in his individual capacity.

In order to state a plausible claim against Boggs in his individual capacity, Plaintiff must allege facts showing that Boggs was personally involved in the underlying constitutional violation through his own participation or supervisory control. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th

4

Cir. 2018). In the factual allegations found under Count III, Plaintiff never mentions Boggs by name; instead, she refers to the defendants collectively. The only statement concerning Boggs' role in her arrest and detention is found earlier in her Amended Complaint, where Plaintiff alleges that she was booked on a fugitive from justice charge "[a]t the direction of defendant Boggs." (*Id*. at ¶ 24).

Under the standards set out by the Supreme Court in *Ashcroft v. Iqbal*, "§ 1983 liability [can] only be imposed upon those defendants whose own individual actions cause a constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010). The use of the collective term "defendants," with "no distinction as to what acts are attributable to whom," makes it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The Court finds that the one specific allegation concerning Boggs is insufficient to ground a claim against him for false arrest/imprisonment or malicious prosecution.[1] Because Plaintiff has requested leave to amend, her false arrest/imprisonment or malicious prosecution claim against Boggs in his individual capacity is **dismissed without prejudice** in order to allow her the opportunity to cure the deficiencies of her pleading.

---

[1] The Court also notes that liability under § 1983 may not be premised upon a theory of respondeat superior. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). Instead, in order to succeed on a supervisory liability theory, a plaintiff must allege an "affirmative link" between the supervisor and constitutional violation. *Booker*, 745 F.3d at 435 (quoting *Schneider*, 717 F.3d at 767). A plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Dodds*, 614 F.3d at 1199.

b. **Count IV**

In Count IV, Plaintiff alleges that Boggs conspired with the other defendants to violate her civil rights protected under 42 U.S.C. § 1983. Defendant Boggs argues in his Response that the the Amended Complaint contains no specific factual allegations to support her claim that he personally participated in the alleged conspiracy, nor that he was motivated by racial or class bias. (*See* Doc. 51 at 10).

It appears that Plaintiff is alleging a conspiracy in violation of § 1985(3), which aims to protect persons or classes of persons from those who would conspire to deprive them of "the equal enjoyment of rights secured by law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Supreme Court in *Breckenridge* held that "this means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.; see also Tilton v. Richardson*, 6 F.3d 683 (10th Cir. 1993). Plaintiff has failed to allege any racial or class-based animus in her Amended Complaint. Moreover, the Court finds that Plaintiff has failed to provide specific allegations concerning Boggs' involvement in the alleged conspiracy. Plaintiff's conspiracy claim against Boggs is thus **dismissed without prejudice**.

c. **Count V**

The Supreme Court has held that an arrested individual must receive a probable cause determination with 48 hours of her arrest unless the government can "demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). Notably, intervening weekends do not qualify as an extraordinary circumstance. *Id*.

In the present case, Plaintiff alleges that she was not provided a probable cause determination within this 48-hour window. She specifically alleges that Boggs "knew, should have

known or had the opportunity to know that [she] was not taken before a magistrate as required by law to determine probable cause." (Doc. 22 at ¶ 85). As discussed above, Plaintiff must allege facts showing that Boggs was personally involved in the underlying constitutional violation through his own participation or supervisory control. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018). The Court finds that Plaintiff's one allegation specific to Boggs is insufficient to make a plausible claim that Boggs was personally involved in this alleged violation of her rights. Thus, Plaintiff's claim against Boggs in his individual capacity for failure to provide a probable cause determination is **dismissed without prejudice** in order to allow her the opportunity to cure the deficiencies of her pleading.

### d. Qualified Immunity

As explained above, the Court finds that Plaintiff has failed to allege plausible claims against Defendant Boggs in his individual capacity. For that reason, and because the Court is allowing Plaintiff to amend her complaint, the Court does not reach the issue of qualified immunity at this time.

### 2. Official Capacity Claims

An official capacity claim generally represents "another way of pleading an action against an entity of which the officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, the claims against Defendant Boggs in his official capacity are treated as claims against the City of Broken Arrow.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694. In other words, a plaintiff cannot rely on a theory of respondeat superior to hold a local government liable under this

7

statute. Instead, "local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Thus, in order to state a viable claim against a local government under § 1983, a plaintiff must allege "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). This policy or custom requirement distinguishes the "acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Several types of actions may constitute a municipal policy or custom, as explained by the Tenth Circuit in *Bryson v. City of Oklahoma City*:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Nowhere in the Amended Complaint does Plaintiff making any reference to a Broken Arrow policy or custom, nor does she allege a causal link between such a policy or custom and the

8

injuries she alleges. *See Graves,* 450 F.3d at 1218. Thus, Plaintiff's claims against Boggs in his official capacity are **dismissed without prejudice**.

3.  **Service of Process**

Lastly, Defendant Boggs asserts that Plaintiff has failed to comply with Fed. R. Civ. P. 4 or Oklahoma's service of process requirements. He states that the summons and Amended Complaint were first delivered to a different David Boggs who resides at 3415 W. Urbana St. in Broken Arrow, Oklahoma. Defendant Boggs does not live at this address. (*See* Doc. 51-1). Plaintiff then delivered the summons and Amended Complaint to "David Boggs (via city clerk for Broken Arrow City Attorney . . . on the 1st day of February, 2018 at 4:11 p.m. at Place of Occupation, 220 South 1st Street, Broken Arrow, OK 74120 (Doc. 85). Boggs has submitted affidavits supporting his contention that neither the City Clerk for the City of Broken Arrow nor the Broken Arrow City Attorney are authorized by appointment or by law to receive service of process on behalf of Boggs. (Doc. 99-1; Doc. 99-2).

A pro se litigant is still obligated to follow the requirements of Fed. R. Civ. P. 4." *DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993). However, the Tenth Circuit has noted that "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 (10th Cir. 1983).

Hence, Skillings' first and second attempts at service of process are hereby quashed. Upon amending her complaint, Plaintiff shall properly deliver a copy of the summons and the newly amended complaint to Defendant Boggs in a manner authorized by Fed. R. Civ. P. 4 or *Okla. Stat.* tit. 12, § 2004.

**IV.   Conclusion**

For the foregoing reasons, Defendant Boggs' Motion to Dismiss Amended Complaint (Doc. 51) is **granted**, and Plaintiff Skillings' claims against Boggs are **dismissed without prejudice**. Plaintiff's Motion for Leave to Amend (Doc. 93) is **granted**. Because the Court has found that it cannot exercise personal jurisdiction over D.T. Adams and Floyd Crowder, (*see* Doc. 109), these individuals should not be included in the newly amended complaint.

SO ORDERED this 26th of March, 2019.

*/s/ John E. Dowdell*
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT