IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SHEMIKA N. SKILLINGS, )
)
Plaintiff, )
) Case No. 17-CV-572-JED-JFJ
v. )
)
FLOYD CROWDER, et al., )
)
Defendants. )

**OPINION AND ORDER**

Before the Court is the Motion to Dismiss filed by Defendants Wagoner County, Oklahoma ("Wagoner County") and Chris Elliott (Doc. 40).[1] In their motion, Defendants argue that Plaintiff Shemika Skillings' Amended Complaint should be dismissed as to them for lack of personal jurisdiction, insufficient process, insufficient service of process, and for failure to state a claim. Defendant Elliott also asserts that he is entitled to qualified immunity. Plaintiff has opposed the dismissal motion and indicates that she should be permitted to amend to cure any deficiencies. (*See* Doc. 64).

**I.     Background**

The following is a summary of Plaintiff's factual allegations, with an emphasis on her allegations against the movants, Defendants Wagoner County and Chris Elliott. These allegations are contained in her Amended Complaint (Doc. 22) and must be taken as true at the dismissal

---

[1] Plaintiff argues that the Motion to Dismiss was untimely filed, but that is not the case. Pursuant to Fed. R. Civ. P. 15(a)(3), Defendants had fourteen (14) days after service of the Amended Complaint to file a responsive pleading. Plaintiff filed her Amended Complaint (Doc. 22) on November 14, 2017, giving Defendants until November 28, 2017, to file a responsive pleading. This Motion to Dismiss was timely filed on November 22, 2017.

stage. *See Broker's Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

On or about March 6, 2016, Plaintiff brought her four-year-old daughter from Virginia to Oklahoma. According to Plaintiff, she had an agreement with her ex-husband that allowed for this trip. Nevertheless, an arrest warrant was issued against her in Virginia for kidnapping. On March 11, 2016, Broken Arrow police officers arrived at Plaintiff's home and arrested her. She spent approximately 36 hours detained in the Broken Arrow Municipal Jail before being transferred to the Wagoner County Jail. Ultimately, four days after her arrest in Broken Arrow, she was released on a $20,000 bond. Plaintiff then appeared before a magistrate judge in Dinwiddie County, Virginia, and the kidnapping charges were dismissed.

Plaintiff brings claims pursuant to 42 U.S.C. §§ 1983 and 1985 against Wagoner County and against Elliott in his individual and official capacities. Plaintiff alleges that Wagoner County "had in effect actual and/or de facto policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct of defendant Chris Elliott, that caused the plaintiff[']s injuries of: severe mental and emotional distress, anguish, humiliation, loss of liberty, loss of reputation, deprivation of society with family, loss of wages, travel expenses, and legal expenses." (Doc. 22 at ¶ 46). She also alleges that Wagoner County "failed to properly train, supervise or discipline Defendants concerning correct practices in evaluating probable cause to issue and/or detain a person on a fugitive warrant and practices and procedures in detaining an Active Duty Service member, thereby permitting defendants to violate the plaintiff['s] Constitutional rights." (*Id*. at ¶ 47). She asserts that Wagoner County, "being aware that such lack of training, supervision, and discipline leads to improper conduct by its employee officers, acted

with deliberate indifference in failing to establish a program of effective training, supervision and discipline." (*Id.* at ¶ 50).

Defendant Elliott, in turn, is alleged to have been the Sheriff of Wagoner County "at all times mentioned in [the Amended Complaint]." (*See id.* at ¶ 15). Plaintiff alleges that Elliott "act[ed] pursuant to an unlawful custom, policy or practice implemented by Wagoner [C]ounty" and "was a direct and proximate cause of the plaintiff['s] deprivation of rights." (*Id.* at ¶ 49). She also asserts that Elliott "knew, should have known or had the opportunity to know that Plaintiff was not taken before a magistrate as required by law to determine probable cause." (*Id.* at ¶ 85).

## II. Preliminary Issues

In her Response to the Motion to Dismiss, Plaintiff requests to drop Defendant Elliott from her lawsuit because he was not the Wagoner County Sheriff when the events contained in her Amended Complaint occurred. (*See* Doc. 64 at 6). She wishes to amend her pleading to add Mr. Bob Colbert, who was the Wagoner County Sheriff at the relevant time. This request for leave to amend is moot, because the Court has already granted Plaintiff leave to amend her pleading in a recent Opinion (Doc. 110). Hence, Plaintiff's claims against Defendant Elliott in his individual capacity are dismissed, and the Court need not address Elliott's qualified immunity argument.

Moreover, as discussed in the Motion to Dismiss, "Wagoner County, Oklahoma" is not a suable entity under Oklahoma law. Pursuant to *Okla. Stat.* tit. 19, § 4, a county must be sued in the name of the "Board of County Commissioners of the County of ____." Because Plaintiff failed to name the proper party, she also failed to effect service of process on the proper party.

In her Response, Plaintiff requests leave to amend her complaint and correctly name the "Board of County Commissioners of the County of Wagoner" as a party-defendant. (Doc. 64 at 6). Upon amending her complaint and naming the proper party, Plaintiff must also obtain proper

3

service of process against the Board of County Commissioners or risk having her claims dismissed under Fed. R. Civ. P. 12(b)(5).

The Court will now proceed to analyze the movants' arguments under Fed. R. Civ. P. 12(b)(6) so that Plaintiff can attempt to cure any other deficiencies in her pleading at the same time that she makes the above-mentioned corrections.

**III.     Dismissal Standards**

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In ruling on a Rule 12(b)(6) motion made against a pro se plaintiff, the Court must liberally construe the pleadings, take all well-pleaded facts as true, and make all reasonable inferences in factor of the non-moving party. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). Yet, the generous construction the Court gives a pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d at 1110.

**IV.     Analysis**

    **1.     Individual Capacity Claims**

Plaintiff asserts several individual-capacity claims against Elliott in her Amended Complaint: "unlawful seizure by arrest, detention and incarceration under void process," brought under § 1983 (Count III); "conspiracy to violate Plaintiff['s] civil rights," brought under § 1985

4

(Count IV); and "failure to release the Plaintiff from custody and for failure to provide a probable cause hearing within 48 hours," brought under § 1983 (Count V). (Doc. 22 at 9-11). As explained in the Court's recent opinion addressing Defendant David Boggs' dismissal motion, Count III could be characterized as a false arrest/imprisonment claim or a malicious prosecution claim under the Fourth Amendment. (*See* Doc. 110).

Under the standards set out by the Supreme Court in *Ashcroft v. Iqbal*, "§ 1983 liability [can] only be imposed upon those defendants whose own individual actions cause a constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1200 (10th Cir. 2010). The use of the collective term "defendants," with "no distinction as to what acts are attributable to whom," makes it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Plaintiff makes very few allegations against Elliott specifically. She alleges that Elliott "act[ed] pursuant to an unlawful custom, policy or practice implemented by Wagoner [C]ounty" and "was a direct and proximate cause of the plaintiff['s] deprivation of rights." (Doc. 22 at ¶ 49). She also asserts that Elliott "knew, should have known or had the opportunity to know that Plaintiff was not taken before a magistrate as required by law to determine probable cause." (*Id*. at ¶ 85). These allegations are insufficient to state a plausible claim against Elliott in his individual capacity because they do not show how he was personally involved in the potential constitutional violations through his own participation or supervisory control. *See Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018); *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (internal citation and quotation marks omitted).

### 2. Claims against Wagoner County

Plaintiff brings Count III, IV, and V against Wagoner County, as well as Count I ("deprivation of rights under the United States Constitution"). (Doc. 22 at 6-11).[2] In order to hold a local government liable for a violation of constitutional rights under § 1983, Ms. Skillings must do so under a theory of municipal liability.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978). Instead, "local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Thus, in order to state a viable claim against a local government under § 1983, a plaintiff must allege "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). Several types of actions may constitute a municipal policy or custom, as explained by the Tenth Circuit in *Bryson v. City of Oklahoma City*:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so

---

[2] Plaintiff also brings Counts III, IV, and V against Defendant Elliott in his official capacity as the current Wagoner County Sheriff. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55, (1978).

permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) **the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused**.

627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (emphasis added).

Plaintiff asserts that Wagoner County is liable under a theory of municipal liability because it "failed to properly train, supervise or discipline Defendants." (Doc. 22 at ¶ 47). In order for Plaintiff to successfully plead a § 1983 claim alleging failure to train, she must plead facts which plausibly show that Wagoner County's failure to train its employees amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id.* (quoting *City of Canton*, 489 U.S. at 389).

As noted above, Plaintiff alleges in her Amended Complaint that Wagoner County "failed to properly train, supervise or discipline Defendants concerning correct practices in evaluating probable cause to issue and/or detain a person on a fugitive warrant and practices and procedures in detaining an Active Duty Service member, thereby permitting defendants to violate the plaintiff['s] Constitutional rights." (Doc. 22 at ¶ 47). She asserts that Wagoner County, "being aware that such lack of training, supervision, and discipline leads to improper conduct by its employee officers, acted with deliberate indifference in failing to establish a program of effective training, supervision and discipline." (*Id.* at ¶ 50). She further alleges that the "policies, practices, customs and usages" of Wagoner County "were a direct and proximate cause of the

7

unconstitutional conduct of defendant Chris Elliott." (*Id*. at 46). The Court finds these allegations sufficient to state a municipal liability claim.

## V.     Conclusion

Because Plaintiff named the incorrect parties in her Amended Complaint, the Defendant's Motion to Dismiss (Doc. 40) is **granted without prejudice**. Plaintiff's request for leave to amend her complaint (Doc. 65) is **moot**, since the Court has already granted her leave to amend (*see* Doc. 110).

SO ORDERED this 26th day of March, 2019.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT