UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHEMIKA N. SKILLINGS, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 17-CV-572-TCK-JFJ |
| J. CHISUM, A. LAUDERDALE, and C. CHAMBERS, | ) |
|       Defendants. | ) |

## OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by Defendants J. Chisum, A. Lauderdale, and C. Chambers (Doc. 116) filed pursuant to Fed. R. Civ. P. 12(b)(6). The defendants argue that Plaintiff Shemika Skillings's ("Ms. Skillings") Third Amended Complaint (Doc. 115) fails to state a claim upon which relief can be granted. Ms. Skillings filed a Response opposing the motion (Doc. 123), and the defendants filed a Reply. (Doc. 129).

### I.  Allegations

This civil rights action arose when the defendants arrested Ms. Skillings in 2016. Ms. Skillings contends the arrest by the defendants, all of whom were officers with the Broken Arrow Police Department, violated her constitutional rights. What follows are the facts as alleged in the operative complaint.

On March 11, 2016, Officers Chisum and Lauderdale appeared at Ms. Skillings's residence and asked her to verify her name and date of birth. (Doc. 115 ¶ 11). Then, without telling her why they were there or showing her a warrant, the officers handcuffed her and placed her in a patrol car. (*Id.* ¶¶ 11–12). The officers then entered her home and detained her four-year-old daughter. (*Id.* ¶ 13).

After Ms. Skillings's arrest, the officers took her to the city jail where she was booked and held for "approximately 36 hours." (*Id.* ¶¶ 14–15). An unknown Broken Arrow PD officer then transferred Ms. Skillings to the Wagoner County Jail, where she was booked as a "Fugitive from Justice" and held for an additional three days. (*Id.* ¶¶ 15–16, 32). When she asked a deputy at the jail to see the warrant, the deputy "admitted to not having a warrant" and said the department was waiting for "further instruction" from authorities in Dinwiddie County, Virginia. (*Id.* ¶ 17). "No criminal charges were ever proffered against [her] regarding the arrest, detainment and imprisonment by the City of Broken Arrow . . . ." (*Id.* ¶ 18).

Ms. Skillings alleges that her arrest was unconstitutional because the defendants were acting without a valid warrant. "The purported warrant for the arrest of the plaintiff as in which the officers assumed to act was void," and "[t]he warrant that Defendant Chisum attempted to obtain after the arrest was made, [sic] was invalid on its face, as would be clearly apparent to any ordinarily intelligent layperson." (Doc. 115 ¶ 28). Moreover, she alleges, "the warrant was not properly obtained consistent with federal law and the Uniform Criminal Extradition Act." (*Id.*).

Ms. Skillings alleges a variety of harms stemming from her arrest. She lost wages when she was placed on administrative leave by her employer for eight months. (*Id.* ¶ 22). She was humiliated when her mugshot appeared on the local news and in the local newspaper. (*Id.*). And she suffered severe mental anguish, loss of reputation, and emotional distress. (*Id.*).

Ms. Skilling's complaint divides her claims into two counts. Count I alleges "Wrongful Arrest and Imprisonment" in violation of the Fourth Amendment. Count II alleges "Violation of the Uniform Criminal Extradition Act." Additionally, the Court construes the complaint as alleging municipal liability. Although the complaint does not specifically identify municipal liability claims as such, it names the officers in both their individual and official capacities. (*Id.* ¶ 4). Accordingly,

the Court construes her complaint as alleging both personal liability against the individual officers and municipal liability against the City of Broken Arrow. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

## II.     Defendants' Motion

The defendants, citing a variety of court and police records, recite a different version of events, which can be summarized as follows:

In 2016, a Virginia court awarded custody of Ms. Skillings's daughter, B.F., to the girl's father. (Custody Order, July 3, 2014, Doc. 50-3; Custody Order, March 7, 2016, Doc. 50-4). On March 7th, 2016, B.F.'s father petitioned the Circuit Court of Prince George County, Virginia, for a show cause order, alleging that Ms. Skillings had taken B.F. to Oklahoma without his permission. (Affidavit and Petition, March 7, 2016, Doc. 50-5). Based on his affidavit, the court entered an order directing Ms. Skillings to appear in court to show cause why she should not be fined or imprisoned for her contempt of the court's prior custody order. (Show Cause Order, March 7, 2016, Doc. 50-6). In addition, on March 11, 2016, a magistrate with the Juvenile and Domestic Relations District Court of Dinwiddie County, Virginia, issued a warrant for Ms. Skillings's arrest on a charge of abduction and kidnapping by a parent in violation of § 18.2-47 of the Virginia Code. (Warrant, Doc. 116-1).

The same day the warrant was issued, the Dinwiddie County Sheriff's Department uploaded a request for Ms. Skillings's arrest and extradition to the National Crime Information Center (NCIC) database. (Doc. 116 at 9, ¶ 13 (citing Aff. Jacqueline Deatherage, Doc. 116-2; NCIC Request of March 11, 2016, Doc. 116-3)). At 6:49 p.m., the Department also asked Broken Arrow PD to send officers to an address where she was believed to be staying. (*Id.* at 9–10, ¶ 15

(citing NCIC Attempt to Locate Request of March 11, 2016, Doc. 116-4)). At 7:14 p.m., Dinwiddie County faxed a copy of the arrest warrant. (*Id.* at 10, ¶ 16 (citing Fax, Doc. 116-5)).

At 7:07 p.m., after Broken Arrow had received the NCIC communications but before it had received the warrant, the department dispatched Officer Chisum, who arrived at Ms. Skillings's address at about 7:19 p.m. (*Id.* at 10, ¶ 17 (citing Arrest and Booking Report, Doc. 116-8)). At 7:34 p.m., Broken Arrow PD sent a message to Dinwiddie County indicating that an officer was on the scene with the suspect and requesting that Dinwiddie County confirm the felony warrant and extradition request. (*Id.* at 10, ¶ 18 (citing Confirmation Request of March 11, 2016, Doc. 116-6)). At 7:48 p.m., Dinwiddie County confirmed. (*Id.* at 10, ¶ 19 (citing NCIC Confirmation, Doc. 116-7)). Chisum then placed Ms. Skilling under arrest. (*Id.* at 11, ¶ 20). In his report, he listed two crimes "Fugitive from Justice" and "Warrant-Abduction by Parent, Remove from State." (Arrest and Booking Report, Doc. 116-8). The warrant number listed in the report matched the warrant issued by Dinwiddie County.

Records show that Ms. Skillings was then booked into the Broken Arrow city lockup at 8:43 p.m. on Friday, March 11, 2016, transferred to the Wagoner County Sheriff's Office about 14 hours later, and brought before a Wagoner County District Court judge on Monday, March 14. (Doc. 116-11; Doc. 116-12; Doc. 116-13). The judge then released Ms. Skillings on a $20,000 extradition bond and ordered her to return in two weeks with proof that she had reported to Dinwiddie County on the outstanding warrant. (Doc. 116-13; Doc. 116-14).

In light of these facts, the defendants argue that Ms. Skillings cannot state a claim entitling her to relief because (1) the officers had probable cause to arrest her, and (2) they brought her before a magistrate "with all practicable speed" as required under Oklahoma's Uniform Criminal Extradition Act. (Doc. 116 at 24–26).

### III.     Legal Standard

The Federal Rules of Civil Procedure require a plaintiff to include in her complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The defendants argue that Ms. Skillings has failed to meet this burden and move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A court's function on a Rule 12(b)(6) motion is not to weigh the evidence that the parties might present at trial, but to assess whether the plaintiff's complaint is legally sufficient to state a claim upon which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing a claim's plausibility, a court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Brokers' Choice*, 757 F.3d at 1136. The court is not bound to accept an allegation as true when it amounts to no more than a legal conclusion masquerading as a fact. *Iqbal*, 556 U.S. at 678.

The Court is mindful that Ms. Skillings proceeds pro se. While pro se pleadings must be liberally construed and held to less stringent standards than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction

to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### IV. Matters Outside the Pleadings

Before advancing to the merits of Ms. Skillings's claims, the Court must determine whether it should evaluate the sufficiency of the claims under Rule 12(b)(6) or convert the defendants' motion to one for summary judgment under Rule 56. Ordinarily, a 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). This rule is subject to two notable exceptions. First, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (quoting *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). Second, courts may consider facts subject to judicial notice. *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). The defendants argue that the Court may consider the documents under either or both of the exceptions. Having examined the documents, which the defendants attach as exhibits to their response, the Court cannot agree.

With respect to the incorporation-by-reference exception, only the warrant (Doc. 116-1) would qualify. The basis of Ms. Skillings's Fourth Amendment claim is that the officers did not have a warrant when they arrested her and the warrant the officers purported to rely on was facially invalid. Thus, because the warrant is both central to one of her claims and referenced in her complaint,[1] it may be considered without converting the motion to one for summary judgment. As

---

1. Although Ms. Skillings disputes the validity of the warrant, she does not appear to dispute the authenticity of the certified copy submitted by the defendants.

the same cannot be said of the other documents, they are not eligible for consideration under the incorporation exception.

The judicial-notice exception is also unavailable. Rule 201 of the Federal Rules of Evidence provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). When, as here, a party requests the court to notice certain facts, notice is mandatory only where the court has been supplied with the information necessary to make this determination. *See* Fed. R. Evid. 201(c)(2). The burden of proving "indisputability" rests on the party requesting judicial notice. Kenneth W. Graham, Jr., *Federal Practice and Procedure* (Wright & Miller) § 5104, Westlaw (April 2021 update) (collecting cases). The defendants have not carried this burden.

First and foremost, the defendants fail to identify the specific facts they seek to notice. Rule 201 allows for the notice of *facts*, not documents. *See* Graham, *supra*, § 5104 ("Courts could save themselves much grief and embarrassment by insisting that lawyers specify precisely the fact to be noticed.").

Second, insofar as the Court can surmise the facts the documents are meant to establish, the defendants have not shown that these are beyond reasonable dispute. Several of the documents appear to be aimed at establishing the officers' knowledge of the Virginia warrant in order to show that they had probable cause to arrest her. This is not a fact that can be judicially noticed based on the materials submitted by the defendants. "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense." *Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir. 2007). Exactly what the officers knew and when they knew it cannot be "accurately and readily

7

determined" from evidence consisting of nothing more than cryptic teletype communications, a self-serving affidavit, and a police report completed by one of the very officers whose knowledge is at issue.

The defendants also seek to notice the fact that Ms. Skillings was held in jail for less than three days, presumably for the purpose of showing that the officers complied with Oklahoma's Uniform Criminal Extradition Act, which requires that arrestees be brought before a judge or magistrate "with all practical speed." *See* Okla. Stat. tit. 22, § 1141.14. These documents, however, cannot be conclusively relied upon because they are neither authenticated nor self-authenticating. *See* Graham, Jr., *supra*, § 5106.4 ("[C]ourt records that are not self-authenticating must be properly authenticated before they are noticed."). Accordingly, they are unfit for judicial notice.

In sum, the Court finds that only the warrant may be considered without converting the defendants' motion to a motion for summary judgment under Rule 56. This is not to say, however, that the motion need be converted in its entirety. As explained further below, her extradition claims, her municipal liability claims, and her claims against Officer Chambers are deficient on their face. Accordingly, the Court will exclude all outside matter with respect to these claims and evaluate them under Rule 12(b)(6).

### V. Discussion

**A. Extradition Claims**

Ms. Skillings's complaint is ambiguous regarding the source of her extradition claims. The heading of Count II—"Violation of the Uniform Criminal Extradition Act 18 U.S.C. § 3182"—cites mismatched statutes. The UCEA is a model extradition statute that has been adopted in states across the country, including Oklahoma,[2] while 18 U.S.C. § 3182 is a federal extradition statute.

---

2. Oklahoma's version of the statute is codified at Okla. Stat. tit. 22, §§ 1141.1–1141.30.

Nevertheless, the Court need not resolve the ambiguity. Both provide a mechanism for implementing the Constitution's provision for interstate extradition. *Ortega v. City of Kansas City, Kan.,* 875 F.2d 1497, 1499 (10th Cir. 1989); *Sanders v. Conine*, 506 F.2d 530, 532 (10th Cir. 1974). And failure to comply with either will give rise to § 1983 liability. *See Ortega*, 875 at 1500 (collecting cases where violation of the state Act supported recovery); *Crumley v. Snead*, 620 F.2d 481, 482–83 (5th Cir. 1980) (holding that 18 U.S.C. § 3182 and U.S. Const. art. IV, § 2 provide a federal right to contest extradition).

In this case, however, Ms. Skillings has not alleged a violation of either the UCEA or 18 U.S.C. § 3182. These statutes exist to protect individuals from wrongful extradition. Accordingly, extradition—i.e., the forcible transfer of the claimant across state lines—is essential to a wrongful extradition claim. Here, there was no extradition. Ms. Skillings alleges that the officers arrested her without a valid warrant, but she makes no allegation that she was subsequently extradited to Virginia. On the contrary, in her response, she represents that she went to Virginia voluntarily after a judge granted bail on the condition that she travel to the state to answer for the charge against her. (Doc. 123 at 2). If the officers arrested her without probable cause, she may be able to state a claim for wrongful arrest under the Fourth Amendment, but she cannot state a claim for wrongful extradition absent a plausible allegation that she was actually extradited.

**B.     Claims Against Chambers**

Ms. Skillings also fails to state a claim of any kind against Defendant Chambers. The Tenth Circuit has held that, when a plaintiff brings § 1983 claims against several government actors in their individual capacities, it is essential "that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "It is axiomatic that, to prevail on a damages

9

claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, '*personally participated* in the alleged violation.'" *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (emphasis added) (quoting *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996)). "Conclusory allegations are not sufficient to state a constitutional violation." *Id.* These principles apply with equal force when, as here, the individual also sues under a statutory theory.

Ms. Skillings alleges that the defendants acted "jointly and individually amongst each other to carry out the illegal arrest and imprisonment," but she makes no specific allegations about Officer Chambers' role. (Doc. 115 ¶ 10). With the exception of a handful of allegations, mostly directed to Officer Chisum, the contested conduct is either attributed to "the defendants" generally or stated in the passive voice. Moreover, unlike Chisum and Lauderdale, whom Ms. Skillings at least places at the scene during her arrest, nothing in the complaint indicates that Chambers was even there when she was arrested. If anything, the complaint suggests the opposite. (*See id.* ¶¶ 11–13 (alleging that "neither" Chisum nor Lauderdale acted lawfully)). Because her complaint fails to allege any specific facts indicating that Officer Chambers participated in her arrest, Ms. Skillings has not stated a plausible § 1983 claim against Chambers, whether under a constitutional or statutory theory.

C.     **Municipal Liability Claims**

As explained above, the Court construes Ms. Skillings's official-capacity claims against the officers as municipal-liability claims against the City of Broken Arrow. The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978). Instead, "local governments are responsible only for 'their *own* illegal acts.'" *Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Thus, in order to state a viable claim against a local government under § 1983, a plaintiff must allege "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). Several types of actions may constitute a municipal policy or custom, as explained by the Tenth Circuit in *Bryson v. City of Oklahoma City*:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amount[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them— of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

Here, the only allegation in Ms. Skillings's complaint that bears on municipal liability is her claim that the defendants "should have . . . been trained on the proper documentation needed to arrest an alleged 'Fugitive from Justice.'" (Doc. 115 ¶ 47). This is not nearly sufficient to state a municipal-liability claim based on a failure-to-train theory.

In order for a plaintiff to successfully plead a § 1983 claim alleging failure to train, she must plead facts that plausibly show the City's failure to train its employees amounts to "deliberate

11

indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id.* (quoting *City of Canton*, 489 U.S. at 389). An allegation that the defendant officers should have been trained regarding the documentation required to make an arrest is far too conclusory to make out a plausible claim of municipal liability.

D.   **Fourth Amendment Claims Against Chisum and Lauderdale**

When extraneous matters are excluded, Ms. Skillings's complaint states plausible claims for false arrest against Defendants Chisum and Lauderdale. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." The general rule is that an arrest is "reasonable" under the Fourth Amendment only when it is based on probable cause to believe that the individual has committed a crime. *Bailey v. U.S.*, 568 U.S. 186, 192 (2013). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Here, Ms. Skillings has alleged that Officers Chisum and Lauderdale came to her home and arrested her in front of her house without a warrant or any reason to believe that she had committed or was committing a crime.

The defendants argue that this claim fails as a matter of law because the officers, having received NCIC communications notifying them that she was wanted on a felony warrant out of Virginia, had probable cause to believe that she had committed "the crime of being a fugitive from justice." (Doc. 116 at 19). This argument is untenable, as it depends on facts outside the complaint.

As explained above, with the exception of the warrant itself, Ms. Skillings's claims must be evaluated by reference to the allegations contained within the four corners of her complaint, which alleges simply that Officers Lauderdale and Chisum arrived at her doorstep, asked her to verify her name and date of birth, and then arrested her. And while the Virginia warrant appears to be valid on its face, there is nothing in *the complaint* that would establish that the officers knew of its existence when they arrested her. Thus, under the facts as alleged, neither Chisum nor Lauderdale had probable cause to make the arrest.

The defendants further argue that, even if Ms. Skillings's arrest was unconstitutional, they are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are shielded from liability unless the federally protected right was "clearly established" at the time the right was violated. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts," establishing that the alleged conduct at issue was in violation of federal law. *See Seifert v. Unified Gov't of Wyandotte Cty. / Kan. City*, 779 F.3d 1141, 1159 (10th Cir. 2015) (quoting *Stewart v. Beach*, 701 F.3d 1322, 1331 (10th Cir. 2012)). Courts are "not to define clearly established law at a high level of generality," but a case "directly on point" is not required where "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011).

Here, Ms. Skillings's complaint alleges that Officers Lauderdale and Chisum arrested her without a warrant or probable cause that she had committed an offense of any kind. This is a case where existing precedent places the constitutional question beyond debate. "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." *Olsen v. Layton Hills*

*Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "The law . . . is unambiguous: a government official must have probable cause to arrest an individual." *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) (citing *Garner*, 471 U.S. at 7). Because Officers Lauderdale and Chisum are alleged to have violated Ms. Skillings's clearly established right not to be arrested except on probable cause that she had committed a crime, they are not entitled to qualified immunity.

Because the defendants' motion has not shown Ms. Skillings's Fourth Amendment claims against Chisum and Lauderdale to be facially deficient, the motion must be denied or converted to summary judgment. *See* Fed. R. Civ. P. 12(d). Given that the motion identifies the key factual questions and includes evidence that would be dispositive if unrebutted, the Court will convert the existing motion rather than deny it with respect to these claims.

### V.   Conclusion

For the reasons stated above, the Court **grants in part** and **converts in part** Defendants' Motion to Dismiss (Doc. 116).

The Court grants the motion with respect to Ms. Skillings's extradition claims, her claims against Defendant Chambers, and her municipal liability claims. The Court declines to grant leave to amend, as further amendment would be futile. Ms. Skillings was on notice that her claims against the city of Broken Arrow and Defendant Chambers lacked the specificity necessary to survive a motion to dismiss,[3] yet she failed to correct for the deficiencies when filing her Third Amended Complaint. The Court has no reason to believe she would do otherwise if given another opportunity. As for her extradition claims, no amendment could account for an extradition that admittedly never occurred.

---

3. *See* Order, Doc. 76 at 18–19 (setting out the law of municipal liability); M. Dismiss, Doc. 111 at 6–7 (arguing for dismissal of claims against Defendant Chambers on identical grounds).

With respect to Ms. Skillings's Fourth Amendment claims against Defendants Chisum and Lauderdale, the Court converts the motion to dismiss to a motion for summary judgment. Defendants Chisum and Lauderdale shall file any evidentiary supplementation by August 10, 2021. By August 24, 2021, Plaintiff shall file any supplement to her response to the motion and shall include any evidence she desires that the Court consider. Defendants shall then file a reply by September 7, 2021.

**SO ORDERED**, this 28th day of July, 2021

_____
TERENCE C. KERN
United States District Judge